IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| EBRO REAL ESTATE HOLDING, LLC ) | Judge Eugene Wedoff |
| ) | |
| Debtor ) | Case No. 09-10104 |
| ) | |
| EBRO REAL ESTATE HOLDING, LLC ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Adversary No. 09-782 |
| ) | |
| BANK OF AMERICA, N.A. (successor by ) | |
| Merger to LaSalle Bank National Association) ) | |
| ) | Hearing: 9/15/09 at 10:00 A.M. |
| Defendant. ) | |

## AMENDED NOTICE OF MOTION

To:   See attached service list

PLEASE TAKE NOTICE that I will appear on September 15, 2009 at 10:00 a.m., before the Honorable Eugene R. Wedoff, or any other Judge sitting in his stead, in Courtroom 744, Dirksen Federal Building, 219 S. Dearborn St., Chicago, IL, and will then and there present Debtor's MOTION FOR INJUNCTIVE RELIEF, at which time and place you may appear and be heard.

/s/ Forrest L. Ingram
One of Debtor's attorneys

Forrest L. Ingram, P.C.
Forrest L. Ingram #3129032
Peter L. Berk
Patrick F. Lambe
Helena Milman
Gautham Kaveti
79 W. Monroe St., Suite 900
Chicago, IL  60603
(312) 759-2838

## CERTIFICATE OF SERVICE

I, Forrest Ingram, an attorney, certify that I caused a true and correct copy of the above and foregoing Amended Notice and the document, to which it refers, on all parties entitled to service, by electronic filing through ECF on August 26, 2007, or by regular U.S. mail, or fax, as set forth on the attached service list, on August 27, 2009.

/s/Forrest Ingram

## SERVICE LIST

*Via ECF & Facsimile*
*U.S. Trustee*
**William T Neary**
Office of the U.S. Trustee, Region 11
219 S Dearborn St, Room 873
Chicago, IL 60604
(312) 886-5794

**Bank of America**
**Robert D Nachman**
Dykema Gossett PLLC
10 S. Wacker Dr.
Suite 2300
Chicago, IL 60606
312.627.2302 (fax)

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| EBRO REAL ESTATE HOLDING, LLC ) | Judge Eugene Wedoff |
| ) | |
| Debtor ) | Case No. 09-10104 |
| ) | |
| ──────────────────────────────── ) | |
| ) | |
| EBRO REAL ESTATE HOLDING, LLC ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Adversary No. 09-782 |
| ) | |
| BANK OF AMERICA, N.A. (successor by ) | |
| Merger to LaSalle Bank National Association) ) | |
| ) | Hearing: 9/15/09 at 10:00 A.M. |
| Defendant. ) | |

## MOTION FOR INJUNCTIVE RELIERF

Plaintiff EBRO REAL ESTATE HOLDING, LLC., Debtor and Debtor in Possession, ("Ebro RE" or "Debtor"), by its attorneys, pursuant to 11 U.S.C. § 105 and Bankruptcy Rule 7065, moves this honorable Court to enjoin Defendant Bank of America, N.A., from proceeding with its motion for relief from stay, scheduled for September 15, 2009, since the Bank comes to this court of equity seeking relief with unclean hands. In support of the motion, Debtor states as follows

1. The court has jurisdiction over this matter under 28 U.S.C. § 1334.

2. This is a core proceeding under 11 U.S.C. § 157(a) and (b)(2) (C) and (K).

3. On or about August 31, 2005, Ebro RE's affiliated company, Ebro Foods, Inc., in connection with its move to its present address at 1330 W. 43rd Place, Chicago, Illinois (herein, the "Plant"), borrowed money from LaSalle Bank to upgrade the building

1

it was leasing from the prior owners. The Bank provided to Ebro a line of credit in the principal amount of $250,000 ("the Original Loan").

4.      Later in 2005 and in 2006, the Bank extended the line of credit to $600,000 (the "Extended Loan"), even though it was fully aware, by reason of the information provided in connection with the prior loan application, of Ebro's financial condition; the Bank knew, therefore, that there had been no increase in the profitability of the business from the time of the first loan in 2005 to the time of the extended loan in 2006 and that, thus, Ebro did not have an income stream that would provide funds to make the payments required under the extended loan.

5.      At the time it extended the loan to Ebro, the Bank also knew that Ebro intended to use the extended loan proceeds to finance improvements to the Plant in which the Bank had an interest, since it already The loan facilitated the further improvements to the Plant. However, the Bank did not disclose to Ebro its interest in the Plant.

6.      Thereafter, the Bank through its agents initiated a foreclosure action against the prior owners of the Plant which Ebro had improved through the loan proceeds of the Extended Loan.

7.      Upon the urging of the Bank and the offer to finance the purchase, the principals of Ebro and other investors formed Ebro RE to purchase the Plant. The Bank then provided a real estate loan in the sum of approximately $2.3 million to the newly formed Ebro RE, the Debtor herein, in order to make it possible for Ebro RE to purchase the Plant from the prior defaulting owner, thus benefiting the Bank. That loan will be referred to herein as the "Real Estate Loan".

8.      Thus, the Bank made the Original Loan, the Extended Loan, and the Real Estate Loan specifically to facilitate the ultimate purchase of the Plant by Ebro RE. The transaction involved Ebro RE leasing the Plant to its affiliate Ebro as well as to other

tenants in order to collect sufficient funds to make monthly mortgage payments to the Bank.

9. Ebro and Ebro RE used the proceeds of the Original Loan and the Extended Loan and the Real Estate Loan (herein collectively referred to as the "Bank Loans") to purchase and retro-fit the Plant for its operations.

10. The Bank conducted due diligence of Ebro and was aware of Ebro's financial condition at the time that it extended all of the Bank Loans.

11. When Ebro and Ebro RE experienced difficulty in meeting their obligations under the Bank Loans, as the Bank surely expected they would, the Bank called in the loans at the end of 2007.

12. Ebro's financial condition was substantially the same at the end of 2007 as it was in August 2005 and during 2005 and 2006, when the Bank was extending the Loans to Ebro and Ebro RE.

13. Ebro is a family owned business that has been in existence since 1965 and it had not faced any bank problems or failed to meet its financial obligations until it dealt with LaSalle Bank and its successor Bank of America in 2005-2008.

15. On information and belief, and unbeknownst to Debtor, at the time of the Bank Loans, the Bank was motivated to lend funds to Ebro and Ebro RE in order to get the Bank out of a bad situation with the Plant.

16. The Bank had an interest in the Plant prior to and at the time that it was extending the Bank Loans to Ebro to retro-fit the building, and at the time it extended the loan to Ebro RE to purchase the Plant.

3

17. The Bank intentionally withheld from Ebro and Ebro RE any knowledge of the Bank's interest in the Plant at the time of the Bank's negotiation and extension of its Bank Loans to Ebro and Ebro RE.

18. The Plant was subject to loans from the Bank at the time of sale and if the Plant had not been sold to Ebro RE at the price that it was, the Bank would have been prejudiced and would have suffered a loss on its prior loan.

19. The Bank's intentional failure to disclose its interest in the Plant to Ebro RE and its desire to have Ebro RE purchase the Plant with funds loaned by the Bank caused Ebro and Ebro RE to take on more debt than they could handle as is evidenced by the fact that the Bank called in the Bank Loans within a year after extending them.

20. The Bank's intentional concealment of its interest in the Plant at the time of the sale to Ebro RE and its extension of the Original Loan and Extended Loan to Ebro constitute a fraud that has damaged Ebro RE and contributed to its filing for bankruptcy.

21. Ebro and Ebro RE became aware of the Bank's concealment of its interest in the Plant and of its fraud in 2009 prior to Ebro RE's filing for Bankruptcy protection.

22. The Bank's knowing concealment from Ebro RE of is financial interest in the Plant and the circumstances surrounding the Plant and its sale to Ebro RE constitutes intentional misrepresentation of a material fact in the extension of the Bank Loans.

23. The withholding and concealment of material information was done with the intent of deceiving Ebro's shareholders to form Ebro RE in order to purchase the Plant, for the benefit of the Bank.

24. Ebro RE reasonably relied on the representations made to it by the Bank, void as they were of any disclosure about the Bank's financial interest in the Plant.

4

25.     As a result of its reliance on the Bank's misrepresentation of the facts, Ebro RE and its affiliate Ebro acted to their detriment and, as a result, suffered severe damage, to be calculated on the following evidence: (a) Ebro RE would not have had to file for bankruptcy relief but for the Bank's calling in its Bank Loans, sweeping Ebro's bank account (thus interfering with Debtor's ability to pay the mortgage), breaching the privacy laws of banking institutions, and interfering with potential investors in Ebro and in Ebro RE; (b) not only was Ebro RE required to purchase the Plant for more than it was worth, but also Ebro had to pay an unbearably high rent to assure that Ebro RE would be able to pay the Bank's mortgage monthly, so that actions of the Bank that affected Ebro likewise affected Ebro RE; (c) Ebro was forced to incur higher Bank Loans from the Bank, and the Bank advanced such loans when it knew, on the basis of its due diligence, that payment of such loans would fatally overextend Ebro's finances, and thus adversely affect Ebro RE's ability to pay the mortgage, its utility, its taxes, and its other expenses; (d) since Ebro has suffered loss of business, attorneys fees, and damage to its reputation caused by the Bank's threatened foreclosure action and calling in the Bank Loans, Ebro RE has also been damaged by such actions of the Bank.

26.     After the Bank called in the Bank Loans and caused Ebro and Ebro RE to be put on the market for sale, in whole or in part, the Bank intentionally interfered with Debtor's attempts to obtain investors who would have helped Debtor to emerge from its financial problems and continue to operate its business without the need for chapter 11 reorganization.

5

27. The Bank also cultivated is own potential purchasers for the Plant and the business of Ebro Foods, Inc., contrary to the interests of Ebro RE, thus further undermining efforts at reorganization outside of chapter 11.

28. The Bank's actions constitute a tortious interference with business arrangements being sought by Ebro and Ebro RE, resulting in severe damage, to be calculated on the following evidence: (a) Ebro RE would not have had to file for bankruptcy relief but for the Bank's calling in its Bank Loans, breaching its privacy in violation of bank privacy laws, and interfering with potential investors in Ebro RE; (b) not only was Ebro RE required to purchase the Plant for more than it was worth, but also Ebro had to pay an unbearably high rent to assure that Ebro RE would be able to pay the Bank's mortgage monthly, so that when the Bank called in Ebro's loans, it had an immediate negative effect on Ebro RE; (c) similarly, the value of the sole real estate asset of Ebro RE has been seriously and negatively affected due to the Bank's interference.

29. On information and belief, the Bank had a different agenda as to who would acquire the Ebro Plant, if Ebro RE had to sell the Plant or if Ebro RE were to go into bankruptcy. Such different agenda caused the Bank not to cooperate with Debtor's efforts but rather to interfere with Debtor's attempts to obtain new potential purchasers of or investors in Ebro RE

30. Bank of America has filed in Ebro RE's chapter 11 case a motion to lift the automatic stay in order to foreclose on Debtor's real property.

31. As is clearly indicated above in Count I, the Bank comes to this court of equity seeking relief with unclean hands, having perpetrated a fraud on the Debtor with respect to the claim asserted by the Bank in this chapter 11 case, and having committed

other tortious conduct in the process of offering the loan and securing it with assets of the Debtor.

32. Pursuant to 11 U.S.C. § 105 and Bankruptcy Rule 7001(9), this Court should refuse to grant the Bank the relief it seeks, since it obtained its advantage through fraud perpetrated on the Debtor.

33. It is a principle of the foundation of equity that to have standing the complainant must come into court with clean hands. *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 244, 54 S.Ct. 146, 147, 78 L.Ed. 293 (1933). A party has unclean hands when, as in the instant case, the party has acted in bad faith and the bad faith actions have "immediate and necessary relation" to the equitable remedy being sought. *Keystone Driller*, 290 U.S. at 245, 54 S.Ct. at 147. Here, the Bank has filed a proof of claim asserting obligations of the Debtor to the Bank which the Bank obtained through fraudulent behavior.

34. The Supreme Court has noted that the principle of unclean hands "gives wide range to the equity court's use of discretion in refusing to aid the unclean litigant. It is not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion." *Precision Inst. Mfg. Co. v. Automotive M.M. Co.*, 324 U.S. 806, 65 S.Ct. 993, 997, 89 L.Ed. 1381 (1945) (internal quotations omitted).

35. However, bankruptcy courts must exercise such discretion "within the confines of the Bankruptcy Code." *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 108 S.Ct. 963, 969, 99 L.Ed.2d 169 (1988)

7

36. Today, "unclean hands" implies that the plaintiff's fault, like the defendant's, may be relevant to the question of what if any remedy the plaintiff is entitled to. *Shondel v. McDermott*, 775 F.2d 859, 868 (7th Cir. 1985)

**WHEREFORE**, Debtor respectfully asks that this court permanently enjoin Bank of America from seeking relief from the stay because the Bank comes to this court of equity seeking relief with unclean hands. In the alternative, Debtor asks that the Court temporary stay any hearing on the Bank's motion to lift the stay until the Court has heard and ruled on Debtor's adversary case which alleges that the Bank committed fraud by the Bank against the Debtor as well as tortious interference against the Debtor. Debtor asks that the Court grant it such other and further relief as may be just.

Respectfully submitted,

EBRO REAL ESTATE HOLDING, LLC

By:

/s/ Forrest L. Ingram
One of its attorneys

Forrest L. Ingram, #3129032
Patrick Lambe
Helena Milman
Gautham Kaveti
FORREST L. INGRAM, P.C.
79 W. Monroe, Ste. 900
Chicago, IL 60603
(312) 759-2838

8