# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| EBRO REAL ESTATE HOLDINGS, LLC, ) | Honorable Eugene Wedoff |
| ) | |
| Debtor. ) | Case No. 09-10104 |
| ) | |
| ) | |
| EBRO REAL ESTATE HOLDINGS, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adversary No. 09 A 00782 |
| ) | |
| BANK OF AMERICA, N.A. (successor by ) | |
| Merger to LaSalle Bank National Association), ) | |
| ) | |
| Defendant. ) | |

## LIMTED RESPONSE TO MOTION FOR INJUNCTIVE RELIEF

Bank of America (the "Bank") hereby files its limited response (the "Limited Response") to EBRO Real Estate Holdings, LLC's (the "Debtor") Motion for Injunctive Relief (Docket No. 4) (the "Injunctive Relief Request").  In support of the Limited Response, the Bank respectfully states as follows:

### Summary of Argument

Debtor's Injunctive Relief Request must be summarily denied because it tracks in all relevant respects the Motion to Stay which was denied by Judge Wedoff a few weeks ago, it is improperly brought as a motion, and is entirely without merit in any event.  This Limited Response discusses the first two points only, and asks for sanctions for Debtor's attempted use of the Bankruptcy Court for nothing but delay.

**Background**

1. On March 24, 2009 (the "Petition Date"), the Debtor and EBRO Foods, Inc. ("EBRO Foods"), an entity that shares common ownership with the Debtor, filed separate voluntary petitions for relief under chapter 11 of the Bankruptcy Code. No official committee of unsecured creditors or trustee has been appointed in the Debtor's bankruptcy case (the "Case").

2. EBRO Foods operates a food canning and processing facility at the real property located at 1330 West 43rd Street, Chicago, Illinois 60609 (the "Property").

3. The Debtor owns the Property, and leases a portion thereof to EBRO Foods for operation of EBRO Food's business.

4. The Bank, as successor by merger to LaSalle Bank National Association, made certain loans and financial accommodations to the Debtor to, *inter alia*, fund the Debtor's purchase of the Property pursuant to that certain Promissory Note in the amount of $2,450,000.00 dated as of August 31, 2005 (as amended and restated, the "Note").

5. As security for its obligations under the Note, the Debtor entered into (i) that certain Mortgage, Security Agreement, Assignment of Rents and Leases and Fixture Filing dated as of August 31, 2005 (the "Mortgage Agreement"), and (ii) that certain Assignment of Rents and Leases dated as of August 31, 2005 (the "Assignment of Rents"; together with the Mortgage Agreement, the "Loan Documents").

6. The Bank perfected its interests under the Loan Documents by recording said documents with the Cook County Recorder of Deeds on September 7, 2005.

7. As of the date hereof, the Debtor owes the Bank the approximate principal amount of $2,275,946.39, plus interest in the approximate amount of $223,229.12, and fees in the approximate amount of $21,706.76 (plus expenses, including attorneys' fees, the

"Indebtedness") pursuant to the Note and the Loan Documents. The Indebtedness continues to increase at a per diem rate of approximately $469.67, plus additional attorneys' fees that may be incurred.

8. The value of the Property is unknown. The Debtor's original Schedule D (Docket No. 11 in the Case) valued the Property at $700,000. On July 14, 2009, the Debtor filed an amended Schedule D (Docket No. 42 in the Case), valuing the Property at $1,400,000.00. The Debtor's Disclosure Statement dated as of July 13, 2009 (Docket No. 40 in the Case), also valued the Property at $1,400,000.00.

9. On August 18, 2009, the Bank filed a motion (Docket No. 61 in the Case) (the "Lift Stay Motion") for relief from the automatic stay with respect to the Property or, in the alternative, to convert the Case.

10. On August 22, 2009, the Debtor filed (i) an objection (Docket No. 55 in the Case) (the "Objection") to the Bank's secured claim (the "Claim") against the Debtor, and (ii) a motion (Docket No. 56 in the Case) (the "Motion to Stay") to stay any hearing on the Lift Stay Motion.

11. The Objection set forth one basis for objecting to the Claim, lack of supporting documentation (Objection at pg. 2, ¶ 6), and then raised an "affirmative defense" of unclean hands (Objection at pg. 3-4), and four "counterclaims" against the Bank for fraud, tortious interference, breach of privacy, and determination of extent and validity of the Bank's lien.

12. On August 25, 2009, the Court held a hearing on the Lift Stay Motion and the Motion to Stay[1]. At the hearing, Judge Wedoff denied the Motion to Stay (Docket No. 58), and scheduled a further hearing on the Lift Stay Motion for September 15, 2009, to allow the Debtor

---

[1] The Bank anticipates receiving a copy of the transcript from the August 25, 2009 hearing just prior to the hearing on the Lift Stay Motion. Assuming the Bank's counsel does receive the transcript in time for the hearing, the Bank will bring enough copies for all parties to view.

time to respond to the Lift Stay Motion. The primary bases stated by Judge Wedoff for denying the Motion to Stay were (i) the Court's belief that it need not, and should not, consider the claims set forth in the Adversary Proceeding when deciding the Lift Stay Motion under the Seventh Circuit case of *In re Vitreous Steel Products Co.,* 911 F.2d 1223, 1234 (7th Cir. 1990) ("[q]uestions of the validity of liens are not generally at issue in a § 362 hearing, but only whether there is a colorable claim of a lien on property of the estate"), and (ii) the fact that Bankruptcy Code section 362(e)(1) requires the Court to hold a hearing on the Lift Stay Motion within a specific time frame, thereby prohibiting the Court from indefinitely delaying or prolonging the hearing.

13. At the August 25, 2009 hearing, Judge Wedoff further advised the Debtor's counsel that counsel incorrectly relied on a previous incarnation of Bankruptcy Rule 3007(a) in concluding that the Objection became an adversary proceeding due to the affirmative defense and counterclaims set forth therein. (Objection, pg. 2, ¶ 2).

14. On August 26, 2009, the Debtor filed a complaint (Docket No. 1) (the "Complaint") against the Bank, commencing the above-captioned adversary proceeding (the "Adversary Proceeding").

15. The Complaint was presumably filed in reaction to the Court's advice at the August 25, 2009 hearing, and the contents of the Complaint are nearly identical to the affirmative defenses and counterclaims set forth in the Objection.

16. On August 26, 2009, the Debtor filed the Injunctive Relief Request in the Adversary Proceeding seeking, once again, to stay any hearing on the Lift Stay Motion. The contents of the Injunctive Relief Request are nearly identical to those of the Motion to Stay.

4

**Relief Requested**

17.     By this Response, the Bank requests entry of an order (i) denying the Injunctive Relief Request, and (ii) awarding costs and attorneys' fees incurred by the Bank in responding to the Injunctive Relief Request.

**Argument**

*Introduction*

18.     It is unclear why the Debtor filed the Injunctive Relief Request on the Adversary Proceeding's docket, since the Injunctive Relief Request clearly relates to the Lift Stay Motion, which was filed in the Case.  In addition to this procedural oddity, the Debtor improperly filed the Injunctive Relief Request as a motion, rather than a separate adversary proceeding.  Finally, the Court's denial of the Motion to Stay acts as collateral estoppel to the Injunctive Relief Request.  For all of these reasons, the Injunctive Relief Request should be denied, and costs and attorneys' fees should be awarded to the Bank in responding to the Injunctive Relief Request.

*The Injunctive Relief Request Should Have Been Commenced as an Adversary Proceeding.*

19.     Pursuant to Bankruptcy Rule 7001 "a proceeding to obtain an injunction or other equitable relief..." is an adversary proceeding.  The Injunctive Relief Request seeks to "permanently enjoin Bank of America from seeking relief from the stay…."  (Injunctive Relief Request at pg. 8).  Thus, the relief sought by the Injunctive Relief Request is governed by Bankruptcy Rule 7001, and the Debtor must initiate a separate adversary proceeding to request the relief sought therein.  The Debtor's failure to commence an adversary proceeding was procedurally incorrect, and the Injunctive Relief Request should be denied.

*The Debtor Is Collaterally Estopped From Bringing the Injunctive Relief Request.*

20.     Moreover, the Debtor is collaterally estopped from bringing the Injunctive Relief Request, styled in any manner. The only tangible difference between the Injunctive Relief Request and the Motion to Stay is that the Motion to Stay relies on the affirmative defenses and counterclaims wrongly set forth in the Objection, while the Injunctive Relief Request relies on (and restates) the causes of action set forth in the Complaint. Judge Wedoff already ruled against the Debtor on the precise relief sought by the Injunctive Relief Request at the August 25, 2009 hearing. In denying the Motion to Stay, Judge Wedoff succinctly explained to the Debtor why the Motion to Stay was legally incorrect, and why a hearing on the Lift Stay Motion can and must be held by the Court. Thus, Judge Wedoff's ruling on the Motion to Stay estops the Debtor from bringing the Injunctive Relief Request; therefore, the Injunctive Relief Request should be denied, accordingly. *See Universal Guaranty Life Insurance Co. v. Coughlin*, 481 F.3d 458, 462 (7th Cir. 2007) (four necessary elements for a ruling to have collateral estoppel effect are: (1) the issue sought to be precluded must be the same as that involved in the prior litigation, (2) the issue must have been actually litigated, (3) the determination of the issue must have been essential to the final judgment, and (4) the party against whom estoppel is invoked must be fully represented in the prior action).

*Costs and Attorneys' Fees Should be Awarded to the Bank*

21.     The Debtor's improper conduct in filing the Injunctive Relief Request has cost the Bank money, needlessly. The Injunctive Relief Request is a procedurally-deficient, thinly-veiled attempt to inappropriately repackage the Motion to Stay, which was already denied by this Court less than thirty days ago. The Motion to Stay had no legal basis, as the Court patiently explained to the Debtor. For the Debtor to now bring the Injunctive Relief Request crosses the thin line

6

between a poorly-conceived legal argument, and frivolous litigation. The Debtor's behavior wastes the time and resources of both this Court, as well as the Bank. Under these circumstances, the Bank should be reimbursed by the Debtor's estate or its counsel for its costs and attorneys' fees associated with responding to the Injunctive Relief Request. *See In re Met-L-Wood Corp.*, 115 B.R. 133, 136 (N.D. Ill. 1990) (upholding bankruptcy court's award of attorneys' fees and costs to party resulting from trustee's frivolous litigation under "fundamental fairness" doctrine).

22. By filing this Limited Response, the Bank does not waive any other legal or equitable responses it may have to the Injunctive Relief Request, nor does the Bank concede any legal or equitable arguments made by the Debtor in the Injunctive Relief Request. In the event that the Court does not deny the Injunctive Relief Request summarily for the reasons set forth herein, the Bank respectfully requests the Court allow the Bank additional time to respond to the Injunctive Relief Request in greater detail. This should in no way delay the hearing on the Lift Stay Motion.

WHEREFORE, the Bank respectfully requests the entry of an order (i) denying the Motion, and (ii) awarding attorneys' fees and expenses incurred by the Bank in responding to the Injunctive Relief Request.

Dated:  September 14, 2009

Respectfully submitted,

**BANK OF AMERICA**

By: /s/ Morgan M. Smith
ROBERT D. NACHMAN (#6185804)
MORGAN M. SMITH (# 6287435)
DYKEMA GOSSETT PLLC
10 S. Wacker Dr., Suite 2300
Chicago, Illinois 60606
Telephone:  (312) 876-1700
Facsimile:  (312) 876-1155
rnachman@dykema.com
mmsmith@dykema.com