# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EBRO REAL ESTATE HOLDINGS, LLC, | ) | Honorable Eugene Wedoff |
| | ) | |
| Debtor. | ) | Case No. 09-10104 |
| | ) | |
| | ) | |
| EBRO REAL ESTATE HOLDINGS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 09 A 00782 |
| | ) | |
| BANK OF AMERICA, N.A. (successor by | ) | |
| Merger to LaSalle Bank National Association), | ) | |
| | ) | |
| Defendant. | ) | |

## NOTICE OF MOTION

**PLEASE TAKE NOTICE**, that on **October 1, 2009 at 10:00 a.m.**, we shall appear before the Honorable Eugene R. Wedoff, in the courtroom usually occupied by him in the Everett McKinley Dirksen Building, 219 South Dearborn Street, Chicago, Illinois 60604, or before any other judge who may be sitting in his place and stead and then and there present the attached **Motion Of Bank Of America To Dismiss Debtor's Complaint**, a copy of which is attached and hereby served upon you.

Dated:  September 25, 2009                Respectfully submitted,

**BANK OF AMERICA**

By: /s/ Morgan M. Smith
ROBERT D. NACHMAN (#6185804)
MORGAN M. SMITH (# 6287435)
DYKEMA GOSSETT PLLC
10 S. Wacker Dr., Suite 2300
Chicago, Illinois 60606
Telephone:  (312) 876-1700
Facsimile:  (312) 876-1155
rnachman@dykema.com
mmsmith@dykema.com

**UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| EBRO REAL ESTATE HOLDINGS, LLC, ) | Honorable Eugene Wedoff |
| ) | |
| Debtor. ) | Case No. 09-10104 |
| ) | |
| ) | |
| EBRO REAL ESTATE HOLDINGS, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adversary No. 09 A 00782 |
| ) | |
| BANK OF AMERICA, N.A. (successor by ) | |
| Merger to LaSalle Bank National Association), ) | |
| ) | |
| Defendant. ) | |

**MOTION OF BANK OF AMERICA TO DISMISS DEBTOR'S COMPLAINT**

Bank of America, successor by merger to LaSalle Bank, N.A. (Bank of America and LaSalle Bank, N.A. will be referred to as the "Bank"), and defendant in the complaint (the "Complaint") filed in the above-captioned adversary proceeding by EBRO Real Estate Holdings, LLC ("EBRO Real Estate" or the "Debtor"), debtor and debtor-in-possession in the above-captioned chapter 11 bankruptcy case, hereby moves to dismiss the Complaint pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6), made applicable through Rules 7009 and 7012 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"). In support of this motion, the Bank respectfully states as follows:

      **A.   Introduction**

1.     The essence of the Complaint is that the Bank loaned the Debtor too much money. The Complaint makes numerous confusing and unsupported accusations against the Bank without including a single affidavit or exhibit to support its wild allegations. The

Complaint also fails to account for a previous executed release which should render this entire matter moot. The Court should dismiss the Complaint for one or all of the following reasons: (a) the Debtor has previously released the Bank for the claims asserted in the Complaint; (b) Counts I, IV, and V do not state a claim for fraud with specificity, as required by Bankruptcy Rule 7009(b); (c) Count II fails to state a claim against the Bank because it does not allege business relationships with specific third parties, or a reasonable expectancy of entering into such a relationship; (d) Count III fails to state a claim against the Bank because it does not state a basis upon which the Bank can be liable for the relief sought; and (e) Count V has been rendered moot.

### B.    Allegations Of The Complaint

2.    The Complaint alleges that on or about August 31, 2005, the Bank's predecessor provided a line of credit in the principal amount of $250,000 (the "EBRO Foods Loan") to EBRO Foods, Inc. ("EBRO Foods"), an entity that shares common ownership with the Debtor. Complaint, ¶ 3. The EBRO Foods Loan was used to improve the food canning and processing facility operated by EBRO Foods at the real property located at 1330 West 43rd Street, Chicago, Illinois 60609 (the "Property"). Complaint, ¶ 3. According to the Complaint, the EBRO Foods Loan was subsequently extended by the Bank, at an unidentified time. Complaint, ¶ 4.

3.    The Complaint further alleges that the Bank's predecessor had an interest in the Property at the unidentified time at which the Bank's predecessor extended the EBRO Foods Loan (Complaint, ¶¶ 5; 16), but failed to disclose this interest to EBRO Foods or the Debtor. Complaint, ¶¶ 5; 17. The Complaint is unclear as to the alleged nature of the Bank's predecessor interest in the Property; paragraph 5 of the Complaint includes a typo which makes it incomprehensible.

4.  The Complaint further alleges that the Bank's predecessor initiated a foreclosure on its interest in the Property against the previous owners of the Property after the extension of the EBRO Foods Loan.  Complaint, ¶ 6.  According to the Complaint "[u]pon the urging of the Bank and the offer to finance the purchase, the principals of [EBRO Foods] and other investors formed [the Debtor] to purchase [the Property]."  Complaint, ¶ 7.

5.  The Complaint further alleges that the Bank's predecessor then made a $2.3 million loan (the "EBRO Real Estate Loan") to the Debtor to purchase the Property from the previous owners of the Property, "thus benefiting the Bank."  Complaint, ¶ 7.  According to the Complaint, the Bank arranged the sale of the Property to the Debtor because if the sale did not occur "at the price that it was, the Bank would have been prejudiced…."  Complaint, ¶ 18.

### C.  The Complaint Must Be Dismissed Because The Debtor Has Already Released The Bank From The Claims Set Forth In The Complaint.

6.  On August 28, 2008, the Debtor executed a letter agreement (the "Letter Agreement") attached hereto as Exhibit A.  The last paragraph of the Letter Agreement contains a release provision which provides as follows:

> **To induce Bank to enter into this letter agreement, Borrower hereby releases, acquits, and forever discharges Bank, and its officers, directors, agents, employees, successors, and assigns, from all liabilities, claims, demands, actions, or causes of action of any kind (if any there be), whether absolute or contingent, due or to become due, disputed or undisputed, liquidated or unliquidated, at law or in equity, or known or unknown, that any one or more of them now has or, prior to the date hereof, ever have had against Bank, whether arising under or in connection with any of the Loan Documents or otherwise.**

7.  Count I of the Complaint alleges that the Bank concealed its interest in the Property prior to the Debtor's purchase of the Property from its previous owner.  Complaint, ¶¶ 5; 17.  That purchase occurred in 2005.  Therefore, even if Count I stated a properly pled claim for fraud with specificity, which it does not, such claim came into existence long before the

3

Letter Agreement was executed. As such, the Bank possesses a complete defense to Count I of the Complaint, and Count I should be dismissed[1].

8. Counts II and III of the Complaint allege tortious interference and breach of privacy by the Bank. Counts II and III are deliberately vague as to when such alleged offenses occurred. However, to the extent Counts II and III allege wrongdoings by the Bank that occurred prior to August 28, 2008, Counts II and III should be dismissed based on the Letter Agreement.

9. Counts IV and V of the Complaint appear to seek additional relief related to the fraud alleged in Count I of the Complaint. Complaint, ¶¶ 39, 42. The release contained in the Letter Agreement provides the Bank with a complete defense to the fraud alleged in Count I for the reasons set forth in paragraph 7, above. Because Counts IV and V seek additional relief related to the fraud alleged in Count I, such Counts must be dismissed along with Count I.

### D. Counts I, IV, And V Must Be Dismissed For Failure To Plead Fraud With Specificity.

10. Count I of the Complaint contains a number of defamatory accusations against the Bank which, the Debtor asserts, add up to fraud. These accusations are made without any specificity, much less a single affidavit or document in support thereof. This is not an appropriate manner of pleading fraud.

11. Bankruptcy Rule 7009(b) provides as follows:

**Fraud, Mistake, Condition of the Mind**. In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge and other condition of mind of a person may be averred generally.

12. A fraud pleading must include "the identity of the person who made the misrepresentation, the time, place and the content of the misrepresentation, and the method by

---

[1] If, pursuant to Fed. R. Civ. P. 12(d), the Court chooses to consider the exhibits set forth herein and to treat this motion as a motion for summary judgment under Fed. R. Civ. P. 56, the Bank hereby requests reasonable time to present all materials pertinent to such a motion.

which the misrepresentation was communicated to the Plaintiff." *GE Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1078 (7th Cir. 1997).

13. The Complaint does not actually allege the Bank made *any* misrepresentation at all, much less with specificity. Instead, the Debtor alleges that the Bank intentionally withheld an unspecified interest in the Property from EBRO Foods and the Debtor prior to the Debtor's purchase of the Property. Complaint, ¶¶ 5; 17. Of course, the Complaint is silent as to whether the Bank had any duty to disclose this interest to the Debtor, because no such duty exists. *See Federal Deposit Ins. Corp. v. W.R. Grace & Co.*, 877 F.2d 614, 619 (7th Cir. 1989) ("A general duty of disclosure would turn every bargaining relationship into a fiduciary one.") Even if the Bank's concealment of its interest in the Property constituted a misrepresentation, nowhere in the Complaint does the Debtor specifically state the identify of the Bank representative who concealed the interest, what exactly the Bank said about the Property, or when, where or how such statements were made. Count I falls far short of fulfilling the pleading standards for fraud, and should be dismissed accordingly.

14. Equally absurd is the Debtor's rambling explanation of the damages it suffered from this alleged misrepresentation. Even if one were to assume that the Debtor did not know of the Bank's interest in the Property prior to purchasing the Property, and further assume that this fact was actively concealed by the Bank, what harm could the Debtor have actually suffered as a result of these circumstances? According to the Complaint, the Debtor was "required to purchase" the Property for more than it was worth. Complaint, ¶ 25. This makes no sense. Why would the Debtor purchase the Property for more than it was worth? The Complaint is silent. How does this relate to the Debtor's allegation that the Bank purposefully did not tell the Debtor of its interest in the Property? Again, the Complaint is silent. The Debtor completed an arms-

5

length lending transaction with the Bank, subsequently could not repay its debt, and now has concocted the Complaint to try to free the Property of the Bank's lien. The law does not support this attempt. The Bank's relationship to the previous owner of the Property has no bearing whatsoever on the Debtor's inability to make payments under the EBRO Real Estate Loan. Count I of the Complaint should be dismissed.

15. As set forth in paragraph 9, above, Counts IV and V of the Complaint seek additional relief based on the Bank's alleged fraud. Since Count I is insufficient as a matter of law, there is no predicate for the relief sought in Counts IV and V, which should be dismissed, accordingly.

### E. Count II Must Be Dismissed For Failure To State A Claim Upon Which Relief Can Be Granted, Since It Fails To Allege A Valid Business Expectancy.

16. The core of Count II, Debtor's Tortious Interference count, is the allegation that (Complaint, ¶27):

> After the Bank called in the Bank Loans and caused Ebro and Ebro RE to be put on the market for sale, in whole or in part, the Bank intentionally interfered with Debtor's attempts to obtain investors who would have helped Debtor to emerge from its financial problems and continue to operate its business without the need for Chapter 11 reorganization.

17. This is insufficient as a matter of law. The elements of the tort of intentional interference with a business expectancy include: (1) a reasonable expectancy of entering into a valid business relationship; (2) the defendant's knowledge of the expectancy; (3) the defendant's intentional and unjustified interference that prevents the realization of the business expectancy; and (4) damages resulting from the interference. *Mannion v. Stallings & Company, Inc.*, 204 Ill. App. 3d 179, 188 (1st Dist. 1990). The first element of a prima facie case for tortious interference, that plaintiff had a valid business expectancy, requires allegations of business relationships with specific third parties. *Du Page Aviation Corp. v. Du Page Airport Authority*,

6

229 Ill. App. 3d 793, 803 (2nd Dist. 1992) *citing Suhadolnik v. City of Springfield*, 184 Ill. App. 3d 155, 184 (4th Dist. 1989); *Parkway Bank & Trust Co. v. City of Darien,* 43 Ill. App. 3d 400, 402-03 (2nd Dist. 1976)).

18.     In the Complaint, however, the Debtor says only that it was *trying to create* a business expectancy, not that it actually had a valid business expectancy, and specifies no targets other than unknown "investors." This does not sufficiently allege tortious interference of any kind.

### F.     Count III Must Be Dismissed For Failure To State A Claim Upon Which Relief Can Be Granted, For The Bank's Disclosures Were Entirely Proper.

19.     Count III of the Complaint alleges that the Bank breached the Debtor's privacy by disclosing financial information to parties interested in purchasing EBRO Foods' business or the EBRO Real Estate Loan. Count III then concludes the Debtor was somehow harmed by these alleged disclosures. Count III offers no explanation as to *how* the disclosure of financial information about the Debtor, an entity whose primary purpose was simply to own the Property, could harm the Debtor in any way. Count III should be dismissed for this reason, alone.

20.     Moreover, any disclosures were expressly permitted by the agreements between the parties. Count III makes reference to Steve Duby. (Complaint, ¶ 35). The Bank did provide Mr. Duby with information in connection with Mr. Duby's interest in purchasing the EBRO Real Estate Loan; however, the Bank only provided such information upon receipt of an executed Confidentiality Agreement from Mr. Duby, a copy of which is attached hereto as <u>Exhibit B</u>. Under the Bank's loan agreement with Ebro Foods, an excerpt of which is attached hereto as <u>Exhibit C</u>, the Bank was permitted to make such disclosures, provided that the person receiving the information had signed a confidentiality agreement. *See* Exhibit C, ¶ 13.9. This provides the Bank with a complete defense to Count III, which should be dismissed accordingly.

7

### G. Count V Is Moot.

21. Count V of the Complaint seeks to enjoin the Bank from seeking relief from the automatic stay to foreclose on the Property. Complaint, ¶ 43. The Court has scheduled an evidentiary hearing on the Bank's motion (Docket No. 61) (the "Lift Stay Motion") to modify the automatic stay for September 29, 2009, effectively rendering the relief requested in Count V of the Complaint moot. Count V of the Complaint should be dismissed accordingly.

### H. Conclusion

22. For all the reasons set forth above, the Bank respectfully requests that this Court dismiss the Complaint, and grant the Bank such further relief as the Court deems appropriate.

Dated: September 25, 2009

Respectfully submitted,

**BANK OF AMERICA**

By: /s/ Morgan M. Smith
ROBERT D. NACHMAN (#6185804)
MORGAN M. SMITH (# 6287435)
DYKEMA GOSSETT PLLC
10 S. Wacker Dr., Suite 2300
Chicago, Illinois 60606
Telephone: (312) 876-1700
Facsimile: (312) 876-1155
rnachman@dykema.com
mmsmith@dykema.com